# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2014-CC-01243-COA

ULYANDA MOORE                                                                 APPELLANT

v.

MISSISSIPPI DEPARTMENT OF                                                      APPELLEE
EMPLOYMENT SECURITY

| | |
|---|---|
| DATE OF JUDGMENT: | 08/14/2014 |
| TRIAL JUDGE: | HON. JOHN ANDREW GREGORY |
| COURT FROM WHICH APPEALED: | CHICKASAW COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ULYANDA MOORE (PRO SE) |
| ATTORNEYS FOR APPELLEE: | ALBERT B. WHITE |
| | LEANNE FRANKLIN BRADY |
| NATURE OF THE CASE: | CIVIL - STATE BOARDS AND AGENCIES |
| TRIAL COURT DISPOSITION: | AFFIRMED APPELLANT'S TERMINATION |
| DISPOSITION: | AFFIRMED - 09/29/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

### BEFORE GRIFFIS, P.J., CARLTON AND WILSON, JJ.

### CARLTON, J., FOR THE COURT:

¶1.     Ulyanda Moore appeals the Chickasaw County Circuit Court's judgment affirming the denial of her claim for unemployment benefits. The Mississippi Department of Employment Security (MDES) denied Moore's claim for benefits after finding that Moore left her work without proper authorization from her nursing supervisor and was terminated as a result. Finding no error, we affirm.

### FACTS

¶2.     Moore worked for North Mississippi Medical Center (NMMC) as a unit coordinator and nurse assistant from October 7, 2002, until her termination on February 21, 2014. After

receiving notification of her termination, Moore filed a claim with the MDES for unemployment benefits. However, after investigating Moore's claim, the MDES determined that Moore voluntarily left work on February 14, 2014, without authorization. The MDES further found that Moore failed to show good cause for voluntarily leaving her employment. As a result of its findings, the MDES concluded that Moore was disqualified from receiving unemployment benefits until she became reemployed and earned eight times her weekly benefit amount. *See* Miss. Code Ann. § 71-5-513 (Supp. 2013).

¶3.    Moore appealed MDES's decision to the administrative law judge (ALJ), who conducted a telephonic hearing. During the hearing, Moore testified that she left work early on February 14, 2014, because she felt unwell. According to Moore, she contacted her supervisor, Judy Duncan, who was the on-duty nurse manager, and told Duncan that she was sick. Moore stated that Duncan told her to go by the employee health center, which Moore then did.

¶4.    The employee-health nurse who treated Moore determined that Moore did not have a fever and was not contagious. The nurse gave Moore two Tylenol tablets for her irritated throat and instructed Moore to take the tablets with some food. Moore stated that the nurse also said to follow up with Moore's doctor if Moore did not feel better. Moore admitted, however, that the nurse did not say Moore was unable to return to work. Although Moore said that she told the nurses' station that she was going home sick, she also admitted that she failed to directly inform Duncan, her supervisor, that she was leaving work.

¶5. Sheryl Wages, the nursing house supervisor, testified that Moore came to her office between 7 a.m. and 7:30 a.m. on February 14, 2014, and told Wages that she planned to leave work at 3 p.m. Wages said she informed Moore that she could not give Moore permission to leave before her shift ended and that Moore would need to speak with Duncan, her nurse manager. Moore allegedly replied, "[W]ell, I'm just tellin[g] you what I'm gonna do." Although Moore testified that she told Wages she planned to leave work because she felt unwell, Wages denied that Moore ever gave her a reason for wanting to leave early.

¶6. Lynn Nelson, the director of employment services, testified that NMMC terminated Moore for leaving work early without permission. Nelson stated that NMMC considered Moore's conduct to constitute patient abandonment. Nelson further testified that NMMC provides all new employees with a handbook containing guidelines, and she stated that each employee signs a statement confirming receipt of the handbook. Nelson also testified that NMMC employees received regular updates regarding policies and guidelines.

¶7. In considering whether Moore was entitled to benefits based on the reason for her separation from NMMC, the ALJ noted that NMMC's policy required employees to obtain medical documentation from the health clinic whenever they needed to leave work due to illness. The ALJ found that leaving work without the proper authorization constituted grounds for termination and that Moore, who had worked at NMMC for eleven years, was aware of NMMC's policy. Based on the record and the testimony provided during the hearing, the ALJ concluded that Moore's actions constituted misconduct. The ALJ modified

3

MDES's decision to reflect that Moore did not voluntarily leave her employment but was instead discharged for leaving work without proper authorization. As a result of her findings, the ALJ upheld MDES's denial of Moore's claim for unemployment benefits.

¶8. Moore subsequently filed an appeal with the MDES Board of Review, which adopted the ALJ's findings of fact and opinion and affirmed the ALJ's decision. Moore then appealed to the circuit court, which affirmed the Board of Review's decision after finding that substantial evidence and the applicable law supported the decision. Aggrieved, Moore now appeals to this Court.

**STANDARD OF REVIEW**

¶9. This Court reviews appeals from a decision of the MDES Board of Review under the following standard:

> The findings of fact from the MDES Board of Review's opinion are conclusive in the absence of fraud and if supported by the evidence. An administrative agency's conclusions will remain undisturbed unless the agency's order is: (1) unsupported by substantial evidence, (2) arbitrary or capricious, (3) beyond the scope or power granted to the agency, or (4) in violation of the employee's statutory or constitutional rights. On appeal, a rebuttable presumption exists in favor of the administrative agency, and the challenging party has the burden of proving otherwise.

*Miss. Dep't of Emp't Sec. v. Harbin*, 11 So. 3d 137, 139 (¶5) (Miss. Ct. App. 2009) (internal citations omitted).

¶10. "We 'must not reweigh the facts of the case or insert our judgment for that of the agency.'" *Miss. Emp't Sec. Comm'n v. Johnson*, 9 So. 3d 1170, 1173 (¶7) (Miss. Ct. App. 2009) (quoting *Allen v. Miss. Emp't Sec. Comm'n*, 639 So. 2d 904, 906 (Miss. 1994)). "In

4

any judicial proceedings under this section, the findings of the board of review as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of said court shall be confined to questions of law." Miss. Code Ann. § 71-5-531 (Rev. 2011).

## DISCUSSION

¶11. "An individual shall be disqualified for benefits . . . [if] he was discharged for misconduct connected with his work[.]" Miss. Code. Ann. § 71-5-513(A)(1)(b). The employer bears the burden of proving an employee's misconduct. *See* Miss. Code. Ann. § 71-5-513(A)(1)(c). In addition, the employer must prove the employee's misconduct by substantial, clear, and convincing evidence. *See Johnson*, 9 So. 3d at 1173 (¶8).

¶12. Our precedent defines misconduct as the following:

> [C]onduct evincing such willful and wanton disregard of the employer's interest as is found in deliberate violations or disregard of standards of behavior which the employer has the right to expect from his employee. Also, carelessness and negligence of such degree, or recurrence thereof, as to manifest culpability, wrongful intent or evil design, and showing an intentional or substantial disregard of the employer's interest or of the employee's duties and obligations to his employer[.]

*Wheeler v. Arriola*, 408 So. 2d 1381, 1383 (Miss. 1982). However, "[m]ere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, or inadvertences and ordinary negligence in isolated incidents, and good faith errors in judgment or discretion [a]re not considered 'misconduct' within the meaning of the statute." *Id.*

5

¶13.    Upon review, we find that substantial evidence existed to support MDES's denial of unemployment benefits to Moore on the ground of misconduct.  As noted by the ALJ, Moore worked at NMMC for eleven years and either knew or should have known that NMMC's policy required employees to obtain proper documentation from the health center before leaving work due to illness.  According to Nelson's testimony, all employees received an employee handbook and signed a statement acknowledging receipt of the handbook at the start of their employment.  Furthermore, Nelson testified that employees received periodic updates regarding NMMC's policies.

¶14.    Although Moore visited the employee health center for treatment, she failed to obtain the documentation necessary to leave work early.  In addition, Moore failed to alert her direct supervisor that she planned to leave work after her visit to the health center.  As Moore's own testimony indicates, she possessed both the opportunity and ability to inform her supervisor that she was leaving early, but she instead decided to tell the nurses' station.  Because Moore failed to follow NMMC's guidelines for such situations, NMMC viewed Moore's conduct as patient abandonment and terminated her employment.

¶15.    Because we find that substantial evidence supported Moore's discharge due to misconduct, we affirm the circuit court's judgment upholding the denial of Moore's claim for unemployment benefits.  Accordingly, we find that this issue lacks merit.

¶16.    **THE JUDGMENT OF THE CHICKASAW COUNTY CIRCUIT COURT IS AFFIRMED.**

        **LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, MAXWELL, FAIR AND**

**WILSON, JJ., CONCUR. JAMES, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION. IRVING, P.J., DISSENTS WITHOUT SEPARATE WRITTEN OPINION.**